**M. Ryan Casey, OSB # 152824**
ryan@rcaseylaw.com
THE CASEY LAW FIRM, LLC
358 Blue River Pkwy Unit E-317
Silverthorne, CO 80498
Tel: (970) 372-6509

*Local / Lead Counsel for Plaintiff and the Proposed Class*

*(Additional counsel listed on signature page)*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| RAINA SCHERER, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION ALLEGATION COMPLAINT** |
| v. | Unlawful Trade Practices (28 U.S.C. § 1332) |
| TAPESTRY, INC., a Maryland corporation; and COACH SERVICES, INC., a Maryland corporation; | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff Raina Scherer ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants TAPESTRY, INC., a Maryland corporation; and COACH SERVICES, INC., a Maryland corporation ("Defendants") and makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## INTRODUCTION

1.      Plaintiff brings this class action under Oregon law on behalf of all consumers who, within the applicable limitations period, purchased one or more products bearing a "comparable value" price at Defendants' Coach Outlet ("CO") retail stores in Oregon.

2.      Defendants operate three CO retail stores in Oregon and substantially identical CO stores throughout the United States, as well as the CO website (coachoutlet.com). They also operate Coach mainline retail stores and the Coach website (coach.com).

3.      Coach and CO do not compete with one another for customers. They are owned and operated by the same company, target distinct markets, and sell different product lines.

4.      On information and belief, Defendants manufacture made-for-outlet merchandise exclusively for CO ("MFO Merchandise") that differs materially from mainline Coach merchandise—including differences in materials, stitching, construction, hardware, and overall workmanship—and therefore is not "similar" to mainline Coach merchandise under OAR 137-020-0010(5)(g).

5.      MFO Merchandise sold at CO retail stores bears a price tag with the words "comparable value," and CO's advertised discounts typically apply against this "comparable value" price.

6.      These "comparable value" price representations appear on price tags and other in-store advertisements but do not identify the origin or basis of the reference price, as required by ORS 646.883(1). Consumers therefore cannot determine whether the higher price reflects the price of any identified or identifiable competitor in the relevant Oregon market.

7.      Based on counsel's investigation, the "comparable value" prices are not tied to any bona fide competitor price for substantially similar goods in the relevant Oregon market. Instead,

they are set uniformly on a nationwide basis and applied to all CO stores regardless of local market conditions, making compliance with Oregon's geographic-market requirement impossible.

8.     Because MFO Merchandise differs in significant respects from mainline Coach merchandise, and because the "comparable value" prices are not derived from substantially similar goods offered by competitors in Oregon, the comparisons do not satisfy any exception under OAR 137-020-0010(6).

9.     Nor do the price advertisements identify the origin of the referenced "comparable value," as required by ORS 646.883(1). Price tags are advertisements for purposes of this requirement.

10.     By assigning "comparable value" prices that reflect the value of higher-quality goods, Defendants also make representations about the characteristics, grade, and quality of MFO Merchandise that are false under ORS 646.608(1)(e).

11.     And because the "comparable value" prices printed on CO advertisements are not the prices at which Defendants—or any competitor in the relevant Oregon geographic market area—have offered substantially similar goods, those representations violate ORS 646.608(1)(s).

12.     CO's uniform, nationwide "comparable value" pricing model is therefore fundamentally incompatible with Oregon's uniquely restrictive rules governing retail price comparisons.

13.     Plaintiff purchased MFO Merchandise from the CO store in Lincoln City, Oregon, that contained "comparable value" price representations. But Defendants' unlawful price representations affect every consumer who shops at CO's Oregon stores. Plaintiff therefore brings this action on behalf of herself and all similarly situated consumers who purchased Defendants' products at CO stores in Oregon. Plaintiff seeks actual or statutory damages, injunctive relief, and

declaratory relief under the Oregon Unlawful Trade Practices Act ("UTPA"), ORS 646.605 et seq., and, in the alternative, relief based on Defendants' unjust enrichment. Plaintiff does not allege fraud or any claim sounding in fraud, as liability under the UTPA turns on whether Defendants' price-comparison practices satisfy mandatory statutory conditions without regard to intent.

## JURISDICTION AND VENUE

14.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because there are more than 100 class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and one or more members of the proposed class is a citizen of a state different from Defendant.

15.    The Court has personal jurisdiction over Defendant in this proceeding because Defendant (a) regularly markets and sells products to consumers in Oregon; (b) does substantial business in Oregon by advertising and selling products in the state, including at its CO retail store locations; (c) serves a market for its products in Oregon; and (d) derives substantial revenue from customers based in Oregon. Plaintiff's claims arise out of Defendants' specific contacts with this forum. Defendants' conduct was directed at Oregon consumers and occurred in Oregon, including at Oregon CO retail stores. Plaintiff purchased the Products in Oregon and suffered economic injury in Oregon.

16.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold products to consumers in this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including Defendants' sale to Plaintiff. Venue is also proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District.

17.     Divisional Venue is proper under LR 3-2(a) because a substantial part of the events or omissions giving rise to the claim occurred in Lincoln County, Oregon, including Defendants' sale to Plaintiff.

## PARTIES

18.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen and resident of Portland, Oregon.

19.     Defendant Tapestry, Inc., previously known as Coach, Inc., is incorporated in Maryland and maintains its principal place of business at 10 Hudson Yards, New York, New York, 10001.

20.     Defendant Coach Services, Inc. is a wholly owned subsidiary of Defendant Tapestry, Inc. Coach Services, Inc. acts as an operating subsidiary for Tapestry's Coach Outlet stores.

21.     Plaintiff is informed and believes that all times material hereto and mentioned herein, each Defendant sued herein was the agent, servant, employer, joint venturer, partner, subsidiary, parent, division, alias, alter ego, co-conspirator, or aider-and-abettor of the other Defendants. Plaintiff is also informed and believed that, at all times, each Defendant was acting within the purpose and scope of such agency, servitude, employment, ownership, subsidiary, alias, and/or alter ego and with the authority, consent, approval, control, influence, and ratification of each remaining Defendant sued herein.

## FACTUAL ALLEGATIONS

**A. Federal and Oregon law prohibit misleading retail price comparisons, which harm consumers.**

22.     Research demonstrates that retail discounts and promotional offers play a significant role in customer purchasing decisions. Retail "sale" messaging predictably increases

demand for advertised goods and can affect transaction prices and purchasing volume. According to one survey, "[n]early two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[1]  And "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[2]

23.     Retailers know that consumers typically lack access to material information about a product's quality, provenance, and market comparators, particularly where those attributes are not verifiable at the point of sale.[3] Reference-price advertising functions as a pricing mechanism that can increase demand and raise transaction prices by creating the appearance of a bona fide comparative discount. When the reference price is fictitious, inflated, or unsubstantiated, the practice distorts the market benchmark against which the transaction price is presented and results in inflated transaction amounts and increased sales volume compared to a truthful, substantiated pricing regime.

24.     In addition to harming consumers, the practice of employing false reference prices also negatively affects competition in retail markets. A retailer's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar products, or otherwise compete in the same market, using valid and accurate reference

---

[1] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[2]      https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html

[3] Phillip Nelson, *Information and Consumer Behavior*, Journal of Political Economy 78, no. 2, p. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").

prices. Businesses that play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

25.    Federal and state courts have highlighted the harms that flow from false reference pricing practices. As the United States Court of Appeals for the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

26.    Accordingly, federal and Oregon law both address the pernicious effects of misleading price comparisons. The federal scheme directly addresses the type of comparative pricing at issue in this Complaint. According to FTC regulations:

> [One] form of bargain advertising is to offer a reduction from the prices being charged either by the advertiser or by others in the advertiser's trade area **for merchandise of like grade and quality – in other words, comparable or competing merchandise – to that being advertised.** Such advertising can serve a useful and legitimate purpose when it is made clear to the consumer that a comparison is being made with other merchandise and **the other merchandise is, in fact, of essentially similar quality and obtainable in the area.** The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area. **For example, retailer Doe advertises Brand X pen as having "Comparable Value $15.00". Unless a reasonable number of the principal outlets in the area are offering Brand Y, an essentially similar pen, for that price, this advertisement would be deceptive.**

16 CFR § 233.2(c) (emphasis added). In short, when a retailer advertises a "comparable value" reference price, the retailer must be reasonably certain that the advertised comparison price does not exceed the actual, prevailing price at which essentially similar goods are actively offered by its principal competitors in the area. *Id.*

27.     Oregon takes a more stringent approach: retail price comparisons are *presumptively unlawful* and permitted only if the seller can prove it satisfies one of a few enumerated exceptions. Under the UTPA, a seller may not make "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." ORS 646.608(1)(j). The Legislature added further specificity: as a general rule, "a price comparison in an advertisement" is *unlawful unless* (1) "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price," (2) "[t]he price comparison is in compliance with ORS 646.608(1)(j) and the rules adopted under ORS 646.608(4)," and (3) "compliance is established based on facts provable by the seller." ORS 646.883. A violation of ORS 646.883 or 646.885 is unlawful under the UTPA. *Id.* 646.608(1)(ee).

28.     To supplement these statutory prohibitions, the Oregon Attorney General promulgated a rigorous administrative rule that is intentionally stricter than the FTC's guidelines. In adopting the rule, the Attorney General concluded that the FTC "guidelines are not satisfactory for either the consuming public, or the business community, because they are too general and contain too many vague terms." Order Adopting Rules 20-010, 20-015, and 20-030 Pursuant to the UTPA, at 4 (July 20, 1976). Oregon's price comparison rule was therefore adopted to provide a "precise standard" with practical guidance for interpreting ORS "646.608(1)(j) [which prohibits] misrepresentations regarding the reasons for, existence of, or amounts of price reductions." *Id.* at 2. The rule itself confirms its purpose: "This rule is intended to define types of price comparisons

which are in violation of that section, by establishing permissible types of reference price advertising." OAR 137-020-0010(2).

29.     Oregon's administrative rule also begins with a prohibition: a seller may not "represent[] that goods are available for sale or lease by it at an offering price less than a reference price unless such reference price comes within any one of the [enumerated] exceptions." OAR 137-020-0010(6). The rule establishes seven permissible types of reference price advertising. *See* OAR 137- 020-0010(6)(a)–(g). A reference price is per se deceptive unless it fits squarely within one of the seven exceptions.

30.     The exception in subsection (6)(c) allows comparable value pricing only when "an *identified or identifiable competitor* is or has in the recent regular course of its business offered to make good faith sales of *the same or similar goods*" at the advertised reference price. OAR 137-020-0010(6)(c) (emphasis added). To qualify as "similar," the "goods associated with a reference price" must be "*similar in each significant aspect*, including size, grade, quality, quantity, ingredients, utility and operating characteristics, to the offered goods." OAR 137-020-0010(5)(g) (emphasis added). A "competitor" is "a retail outlet in the person's *geographic market area* with whom the person *in fact competes for sales*." OAR 137-020-0010(5)(c) (emphasis added). There is no exception that permits a seller to determine a comparative price based on its opinion of an item's value. Nor may a seller rely on the price of higher-grade merchandise or on atypical prices outside the seller's genuine competitive market.

31.     Together, Oregon's price-comparison statutes and rules make clear that price comparison advertisements are prohibited in Oregon unless *all* of the following criteria are satisfied: (a) the reference price reflects a bona fide price, (b) offered by a true local competitor, (c) in the recent regular course of its business, (d) for an item that is similar in each significant

aspect, and (e) the origin of the price is clearly and conspicuously displayed on the advertisement. Further, sellers must be able to show their work, as "compliance is established based on facts provable by the seller." ORS 646.883(2).

32.     The UTPA also prohibits businesses from making false or misleading representations of fact concerning the offering price of, or the person's cost for goods, *id.* 646.608(1)(s); representing that goods have characteristics that they do not have, *id.* 646.608(1)(e); advertising goods with intent not to provide the goods as advertised, *id.* 646.608(1)(i); and any other unfair or deceptive conduct in trade or commerce, *id.* 646.608(1)(u), which may be specified in regulations promulgated by the Oregon Attorney General.

**B. Defendants employ a pervasive and systemic fake discount scheme in violation of federal and Oregon law.**

33.     Defendants employ a standardized pricing model at CO stores under which merchandise is offered for sale at a stated discount off a higher reference price described as a "comparable value" price. The reference price appears on price tags, sales receipts, and other advertisements and is presented as a benchmark against which the transaction price is discounted.

34.     Defendants always (or almost always) sell MFO Merchandise at prices significantly lower than the "comparable value" prices. This scheme follows a simple pattern: (1) each CO product features an inflated "comparable value" reference price; (2) the consumer has no way of determining the origin or basis for the "comparable value" price or how it was chosen or calculated based on information provided by Defendant; (3) the products are consistently offered at some substantial discount to the "comparable value" price, whether by way of a limited-time storewide promotion, a promotion that applies to particular categories of products (e.g., sweaters or outerwear), or simply a lower price for a particular item that appears to reflect a discount off the

reference price; and (4) while the terms of the applicable promotions change frequently, the "comparable value" price is rarely, if ever, the applicable price for any CO products.

35.    CO's discounts are based on the false premise that CO products should be "valued" at a higher price than their current sale price. In truth, the "comparable value" prices are unmoored to any actual price at which actual competitors in the same geographic area are offering "similar goods," and these prices create the appearance of a genuine comparative discount and operate to increase demand and support higher transaction prices.

36.    By offering a continuous series of promotions, Defendants present transaction prices as time-limited bargains measured against higher reference prices that are not bona fide. This promotional structure creates time pressure at the point of sale by conditioning the advertised transaction price on a purported discount from the stated reference price, even though the reference price is not substantiated and rarely (if ever) functions as a real offering price for MFO Merchandise.[4]

37.    The "comparable value" prices do not appear to be tied to actual offering prices by true competitors selling substantially similar goods in the same geographic area. However, the

---

[4] Even if CO did previously offer its merchandise at the "comparable value" price for some short period of time, that limited offering would not legitimize the practice. *See, e.g.*, OAR 137-020-0010(6)(a) ("The reference price is stated or readily ascertainable, and is a price at which the person, in the regular course of its business, made good faith sales of the same or similar goods or, if no sales were made, offered in good faith to make sales of the same or similar goods, either: (A) Within the preceding 30 days; or (B) At any other time in the past which is identified."); *see also* 16 C.F.R. § 233.1(a) (requiring that a comparison reference price be the "price at which the article was offered to the public on a regular basis for a reasonably substantial period of time"); see also 16 C.F.R. § 233.3(a) ("To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer.") (emphasis added); 16 C.F.R. § 233.3(d) ("[I]f the list price is significantly in excess of the highest price at which substantial sales in the trade area are made, there is a clear and serious danger of the consumer being misled by an advertised reduction from this price.").

facts necessary to substantiate the origin and accuracy of the advertised reference prices are exclusively within Defendants' possession, custody, and control.

38.     The comparable value reference prices used at Oregon CO stores are set pursuant to a centralized, nationwide pricing policy. The same reference prices appear on identical merchandise sold at Defendants' outlet stores in other states, without adjustment for local market conditions, competitors, or geographic differences. Neither the price tags nor other in-store materials disclose how the comparable value reference prices are determined, what products or retailers (if any) are used as comparators, whether the reference prices correspond to any actual offering prices in the Oregon market, or whether the reference prices reflect Defendants' own prices, competitor prices, or subjective valuations.

39.     While the basis for Defendants' "comparable value" calculations is unclear, the prices do not correlate to substantially similar goods sold by similar retailers in the area. Instead, CO's "comparable value" prices are more consistent with mainline Coach product prices and the prices of similar products offered by *Coach's* direct competitors, as opposed to regular, nondiscounted prices of comparable CO products or the prices of similar products sold by *CO's* competitors.

40.     The MFO Merchandise sold at Defendants' CO stores is manufactured specifically for outlet distribution and differs from Defendants' mainline Coach merchandise in overall quality. Despite these differences, the comparable value reference prices signal equivalence to higher-quality products sold by Defendants' mainline Coach stores and by other retailers selling higher-quality goods.

41.     While CO's "comparable value" prices may be based upon prices for *similar-looking* styles sold at Coach stores or the stores of Coach's direct competitors, such a comparison

is improper because Coach and CO are not competitors. The two stores are commonly owned by Defendant Tapestry and do not compete in any economic sense, whether in Oregon or elsewhere. Rather, they are different product lines that cater to different customer segments. Companies that employ Defendants' model of producing different products at different price points for their "mainline" and "factory outlet" locations do so to expand market reach to different customer segments, not to erode or cannibalize higher-price sales at the mainline stores. Factory stores serve a different segment and help introduce the brand to consumers who may not shop at mainline stores. In addition, customers who shop at mainline stores are seeking different quality and design attributes than outlet or factory store customers, who tend to be more budget conscious. Mainline and factory stores are complementary rather than competitive sales channels, and there is limited crossover between the respective customer bases.

42.     The CO retail store locations in Oregon are located in outlet shopping malls. By comparison, the mainline Coach store location in Oregon is located in Clackamas Town Center in Portland and Washington Square in Tigard, neither of which are outlet malls.

43.     The products offered by Coach and CO are not similar in each significant aspect. Defendants' Coach products and products sold by Coach's competitors are of a higher quality than CO items, which are made to a lower standard to be sold at a lower cost.

44.     Relatedly, CO's "comparable value" prices exceed the prices at which similar merchandise is being offered by representative retail outlets in the area.  CO's closest competitors in the state include Michael Kors Outlet.

45.     Based on counsel's investigation, CO's "comparable value" prices are not derived from, and materially exceed, the prices at which substantially similar goods are offered for sale by competitors in the geographic market during the same time period.

Class Action Allegation Complaint          13

46.     Based on counsel's investigation, CO assigns "comparable value" prices to wallets, handbags, and accessories that consistently exceed the prices at which substantially similar goods are offered for sale by identifiable competitors at outlet malls in Oregon during the same period. The specific basis, if any, for CO's "comparable value" prices is uniquely within Defendants' possession. But whatever the basis, the "comparable value" prices cannot be reconciled with observable market pricing for substantially similar goods.

47.     For example, the Ethan Large Brief in Signature Canvas sold by CO and depicted below bears a stated "comparable value" price of $578. On December 2, 2025, CO offered the bag for $231.20—representing a purported 60 percent discount from the reference price.



48.     But CO's use of a $578 "comparable value" price for the Ethan Large Brief in Signature Canvas does not reflect the price at which substantially similar goods are offered for sale by identifiable competitors in the geographic market. Instead, the reference price materially exceeds observable market prices for comparable outlet-grade brief-style bags sold by actual

competitors at the same outlet shopping centers. On the same date, Michael Kors Outlet—an identifiable competitor located at some of the same outlet store shopping centers in Oregon as CO—offered a substantially similar item, the Cooper Signature Logo Briefcase, for $126.75. Based on Google Shopping price-tracking data, the Cooper Signature Logo Briefcase was offered for sale at prices ranging from approximately $126.75 to $189.00 in December 2025 and January 2026. The Michael Kors Outlet bag is substantially similar to the Ethan Large Brief in Signature Canvas sold by CO in all relevant respects, including overall size, function, construction, materials, and intended use. Both products are logo-printed coated canvas briefcases designed for everyday consumer use and are marketed to outlet-store consumers shopping for discounted handbags and leather accessories at outlet malls in Oregon. The Michael Kors Outlet brief was not a clearance item, liquidation item, or discontinued product. Rather, it was offered as part of Michael Kors Outlet's regular outlet pricing practices.

49.     As another example, the Trekker Bag 52 in Signature Canvas sold by CO and depicted below bears a stated "comparable value" price of $798.00. On January 7, 2026, CO offered the bag at the Woodburn Premium Outlets for $319.20, representing a purported discount of 60 percent from the stated reference price.



50.    CO's use of a $798 "comparable value" price for the Trekker Bag 52 in Signature Canvas does not reflect the price at which substantially similar goods are offered for sale by identifiable competitors in the geographic market. Instead, the reference price materially exceeds observable market prices for comparable outlet-grade brief-style bags sold by actual competitors at the same outlet shopping centers. On the same date, Michael Kors Outlet offered a substantially similar item, the Harrison Logo Weekender Bag, for $299.00. Based on Google Shopping price-tracking data, the Michael Kors Outlet Harrison Logo Weekender Bag was offered for sale at prices ranging from $279.20 to $299.00 from November 2025 to January 2026. The Michael Kors Outlet Harrison Logo Weekender Bag is substantially similar to CO's Trekker Bag 52 in Signature Canvas in all relevant respects. Both products are large, coated canvas duffel bags with leather trim marketed to outlet-store consumers shopping for discounted handbags and leather accessories in

Oregon. The Michael Kors Outlet bag was not a clearance item, liquidation item, or discontinued product.

51.     This contemporaneous offering demonstrates that CO's use of a $798 "comparable value" price for the Trekker Bag 52 in Signature Canvas does not reflect the price at which substantially similar goods are offered for sale by identifiable competitors in the geographic market. Instead, the reference price materially exceeds observable market prices for comparable outlet-grade wallets sold by actual competitors at the same shopping center.

52.     Nothing about the competitor offerings described above was atypical, short-lived, or outside the competitors' recent regular course of business. Even after typical holiday sales ended in January 2026, none of the prices listed above ever increased to CO's "comparable value" price.

53.     This is the type of investigation Defendants themselves have identified as relevant to evaluating "comparable value" pricing. In ongoing California litigation involving the same pricing practices, Defendants have stated that CO's "comparable value comparisons" are a "distinct category of advertising" governed by 16 C.F.R. § 233.2(c). *See* Demurrer to the Second Amended Class Action Complaint at 9, 18, *Slater v. Tapestry, Inc.*, JCCP Case No. 5371 (Cal. Super. Ct., L.A. Cnty. Oct. 13, 2025). Defendants further explained that, unlike former-price advertising, "*comparable value* advertising … is, by definition, concerned with the value of *similar products in the market*," rather than the seller's own historical prices. *Id.* at 10–11. While not dispositive of any Oregon law issue, Defendants argued that whether "comparable value" pricing is deceptive turns on facts concerning market prices charged by competitors, faulting plaintiffs for failing to allege "how comparable and competing items are valued or priced by other retailers." *Id.* at 24.

54.     Defendant also represents that MFO Merchandise has characteristics that they do not have by anchoring the products with a monetary "value" attributable to superior goods. Based on investigation of counsel, it is unclear what actual products (if any) were chosen as bases for comparison for the Products purchased by Plaintiff, but they do not correlate to prices offered by sellers such as Coach Outlet, Marc Jacobs Outlet, Michael Kors Outlet, and Tory Burch Outlet.

### C. Plaintiff's shopping experience and purchases

55.     On April 23, 2025, Plaintiff Scherer visited the CO retail store location at Lincoln City Outlets in Lincoln City, Oregon. During that visit, Plaintiff purchased two items (the "Products").

56.     The Products were MFO Merchandise with advertised "comparable value" prices on the price tags. The advertised discounts and effective prices for the Products were calculated by reference to the stated "comparable value" prices. There were prominent signs on the CO store's windows and posted throughout the store advertising large percentage-off discounts and savings.

57.     Plaintiff purchased the Ergo Bag In Wavy Stripe Upcrafted Leather (item number CQ004) (the "Ergo Bag"), which showed a "comparable value" price of $295.00. Plaintiff paid $118.00 for the Ergo Bag, representing an apparent 60 percent discount. The comparable value appeared on the product's price tag and receipt, functioning as the benchmark against which the claimed savings were calculated in both in-store representations and on the sales receipt. Neither the price tag for the Ergo Bag nor any in-store signage identified what products, retailers, or prices were used to derive the $295.00 "comparable value" price.

58.     The Ergo Bag is also sold on CO's website, as shown in the image below.



59. Based on the website description, the Ergo Bag measures 9.8 inches long, 6.0 inches high, and 3.0 inches wide. The website describes it as being made of "Upcrafted™ leather, a unique artisan material made by sewing together squares of scrap leather left over from the production of Coach leather goods." It features an inside slip pocket, magnetic snap closure, and digital passport accessed via NFC chip or QR code.

60. While the basis for the $295.00 "comparable value" price for the Ergo Bag is known only to Defendants at this time, based on investigation of counsel, there were no bags with comparable size, features, and materials being sold at Michael Kors Outlet at the time of Plaintiff's purchase for anywhere near the ticketed "comparable value" price.

61. By presenting the Ergo Bag with a $295.00 comparable value, Defendants conveyed that the bag was comparable in value to substantially similar handbags sold in the geographic area at or around that price point. That price signal implied equivalence in quality, materials, and construction to higher-priced handbags, notwithstanding that the merchandise was manufactured specifically for outlet distribution.

62.    Defendants' unlawful price comparisons even extend to its printed receipts, which misstate the exact "savings" realized by the customer, both for each individual purchase and the transaction as a whole, by reference to fictitious "comparable value" prices. These unlawful price comparisons present fictitious "savings" and inflate the apparent discount off a stated reference price, thereby distorting the transaction price and making the amount paid appear lower relative to a benchmark that is not bona fide and rarely, if ever, an actual offering price for MFO Merchandise.

63.    On Plaintiff's receipt, shown below, Defendant made additional product pricing and value representations regarding the Products.

```
              LINCOLN CITY
       1500 SE EAST DEVILS LAKE RD
               SUITE 115
         LINCOLN CITY, OR 97367
              (541) 996-6772


                SALE
--------------------------------------
CUSTOMER NAME:              RAINA SCHERER
--------------------------------------
ASSOCIATE:                          ALEX
--------------------------------------
UPCFT WV STRIP ERGO-WK1        $118.00N
  196395124220
  CQ004 WK1 ONE  1 @ $295.00
  PRICE:$118.00 SAVINGS:($177.00)
3IN1 CC BOX LTHR-BLK            $23.99N
  889532629480
  75479 BLK ONE  1 @ $95.00
  PRICE:$79.99 SAVINGS:($15.01)
  70% OFF CLEARANCE     ($56.00)
--------------------------------------
SUBTOTAL                       $141.99
SALES TAX - 0.0000%              $0.00
TOTAL                          $141.99
```

64.    The receipt listed the "comparable value" price, the applicable discount, and the effective sale price for each of the Products. For example, Defendants printed on the receipt that the effective sale price for the Ergo Bag was $118.00, stating that the price represented a "SAVINGS" of $177.00 off the reference price of $295.00. These receipt representations treated the stated reference prices as the benchmark "comparable value," represented a quantified "SAVINGS" off that benchmark, and thereby communicated a specific transaction discount

measured against a reference price that was not disclosed, not substantiated, and not a bona fide offering price for MFO Merchandise.

65.    The ticketed "comparable value" prices represented a comparative benchmark that, under Oregon's scheme, must correspond to a bona fide competitor offering price for substantially similar goods in the relevant geographic market—information Defendants did not disclose.

66.    The unlawful reference-price representations are made at the point of sale and were a substantial factor in causing the transactions to occur at the prices charged, by establishing the stated benchmark against which Defendants calculated and advertised the sale price and the purported savings.

67.    Even if a particular consumer neither sees and/or relies on the unlawful reference-price representation, they nevertheless suffer a loss. Defendants are able to charge a higher market value than they would otherwise as a result of their unlawful reference-price representation scheme.

68.    Plaintiff was exposed to Defendants' unlawful reference-price representations in connection with her purchases. Those unlawful price representations were part of the price presentation at the point of sale and were a substantial factor in causing the transactions to occur at the prices charged, by establishing the stated benchmark against which Defendants calculated and advertised the sale price and the purported savings.

69.    Even if an individual consumer does not see the unlawful reference-price representation, they nevertheless suffer a loss. Defendants are able to charge a higher market value than they would otherwise as a result of their unlawful reference-price representation scheme.

70.    Plaintiff and Class members did not receive the value and discount on Defendants' comparative price advertising because the stated reference prices were not bona fide and the

quantified "savings" were calculated from unsubstantiated benchmarks. Defendants' comparative price advertising therefore caused economic harm by inflating transaction prices.

**D. Injunctive relief is necessary.**

71.    CO's sales tactics give customers the wrongful impression that items are being offered at a substantial discount when, in reality, the stated reference price never applied.

72.    The underlying premise of a reference price is that the price represents a price at which the product at issue was previously offered. The list prices Defendant advertises are not actually Defendants' regular prices (the prices it usually charges) because Defendants' Products are always available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all, because customers can always buy Defendants' Products at the discount price.

73.    Plaintiff intends to shop at the CO retail store location in Oregon in the future and is likely to be harmed again absent injunctive relief requiring compliant, substantiated comparative pricing and disclosure of the origin of any reference price.

74.    Plaintiff will be harmed in the future absent injunctive relief because Defendants' current practices withhold required origin and substantiation information for comparative prices, leaving consumers unable to verify whether a represented reference price satisfies Oregon's statutory and regulatory conditions.

75.    The unlawful practices and policies alleged herein, and experienced directly by Plaintiff, are not limited to any single product or group of products. Rather, Plaintiff's unlawful advertising, sales practices, and printed sales receipts, which advertise and state false reference prices and false percentage-off and dollars-off discounts, were, and continue to be, systematic and pervasive across all of Defendants' products at its CO stores in Oregon.

## CLASS ACTION ALLEGATIONS

### A. Class Definition

76.    Plaintiff brings the asserted claims on behalf of the following proposed Class:

> All persons who, within the applicable statute of limitations period, purchased one or more CO products in the State of Oregon at a discount to a ticketed "comparable value" price after being exposed to Defendants' "comparable value" price advertisements.

77.    The applicable limitations period referred to by the class definition is expansive and extends back years based on the "delayed discovery" rule explicitly provided for in the Oregon Unlawful Trade Practices Act. *See* ORS 646.638(6). Defendants' unlawful false discounting practices have been pervasive at its Oregon stores—and have been at the core of its marketing plan—for many years (the exact length of time will be subject to discovery and proof). By design, the false advertising scheme by its very nature is hidden and impossible for the typical consumer to discover. Plaintiff and the Class did not know, and could not have known, that these ticketed reference prices and discount representations were false. Thus, the applicable limitations period—and the corresponding class period—extends back to the very first date that Defendant began engaging in the unlawful conduct alleged herein.

78.    Plaintiff reserves the right to expand, limit, modify, or amend the class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based on, *inter alia*, changing circumstances and new facts obtained.

79.    The following people are excluded from the proposed Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3)

persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**B.  Numerosity & Ascertainability**

80.    Members of the proposed Class are so numerous that their individual joinder herein is impracticable. The precise number of members of the class and their identities are unknown to Plaintiff at this time but may be determined through discovery. The Class may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

**C.  Predominance of Common Questions**

81.    Common questions of law and fact exist as to all members of the proposed Class, and those questions predominate over questions affecting only individual members. Common legal and factual questions include, but are not limited to: (a) whether Defendants' misconduct set forth in this Complaint violates the UTPA, and, if so, which specific subsections; (b) the products for which CO uses "comparable value" pricing; (c) whether Plaintiff and the Class are entitled to injunctive or declaratory relief; and (d) whether Defendant should be ordered to pay statutory damages of $200 to Plaintiff and to each Class member. Defendants' "comparable value" representations are uniform across products and transactions, do not vary by consumer, and do not depend on individualized evidence of any purchaser's subjective interpretation of the reference price, because the comparative price representations are uniform and operate at the point of sale.

**D. Typicality**

82.    Plaintiff's claim is typical of the claims of the Class in that Plaintiff and members of the Class were harmed as a result of Defendants' uniformly illegal and unfair pricing practices.

**E. Adequacy**

83.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent; she has retained competent counsel experienced in prosecuting class actions; and she intends to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

**F. Superiority**

84.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of those issues. Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive and declaratory relief with respect to the Class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Oregon Unlawful Trade Practices Act -- ORS §§ 646.605 et seq.
### (By Plaintiff and the Class)

85.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

86.    Plaintiff brings this cause of action on behalf of herself and members of the Class.

87.    Defendants are "persons" under the UTPA, as defined by ORS § 646.605(4). The definition of "person" includes "corporations," and as alleged above, Defendants are corporations.

88.    Defendants engage in the conduct of "trade" and "commerce" under the UTPA. Defendants do this by advertising, offering, and distributing goods in a manner that directly and indirectly affects people of the state of Oregon. ORS § 646.605(8). Defendants advertise and sell leather goods, handbags, accessories, and other goods at a retail store in Oregon and online, thereby serving and targeting a market for their products in Oregon. Due to Defendants' actions, the MFO Merchandise products have been marketed and sold to consumers in Oregon and harmed consumers in Oregon, including Plaintiff and the Class.

89.    Defendants' unlawful methods, acts, and practices described herein were committed in the course of Defendants' business. ORS § 646.608(1).

90.    The products advertised, offered, and sold by Defendants constitute "goods" that are or may be obtained primarily for personal, family, or household purposes, as defined by ORS § 646.605(6). Plaintiff and members of the Class purchased the products advertised by Defendants for personal, family, or household purposes.

91.    The CO price tags, in-store signage, and online statements or representations regarding CO's products and prices described in this complaint are "advertisements," as defined

by ORS § 646.881(1). These statements and representations were made in connection with the solicitation of business.

92.    Defendants' advertisement and offering of sale prices and discounts based on or compared to ticketed "comparable value" price are "price comparisons," as defined by ORS § 646.881(2). These statements claim that the price offered to consumers reflects a reduction from a stated "comparable value" price.

93.    Defendants' use of "comparable value" reference prices constitutes a single course of conduct that gives rise to liability under multiple provisions of ORS 646.608. Each subsection alleged below addresses a distinct statutory prohibition triggered by the same conduct.

***ORS 646.608(1)(ee) violation based on failure to comply with ORS 646.883(1)***

94.    ORS 646.608(1)(ee) provides that "[a] person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person … [v]iolates ORS 646.883 or 646.885." A failure to comply in full with ORS 646.883 or ORS 646.885 thus constitutes a per se violation of ORS 646.608(1)(ee).

95.    Defendants violate ORS 646.608(1)(ee) by failing to "clearly and conspicuously identif[y] in the advertisement the origin of the price that the seller is comparing to the seller's current price." ORS 646.883(1). Defendants' advertisements display "comparable value" prices but fail to identify the origin of those prices, such as whether the prices reflect a specific competitor's current price for a substantially similar item available in the Oregon market.

***ORS 646.608(1)(ee) violation based on failure to comply with ORS 646.883(2)***

96.    Separately, Defendants violate ORS 646.608(1)(ee) by advertising price comparisons that are not in compliance with ORS 646.883(2).

97.     ORS 646.883(2) provides that retail price comparisons must (a) comply with ORS 646.608(1)(j), (b) comply with rules adopted under ORS 646.608(4), including OAR 137-020-0010(6), and (c) be based on facts provable by the seller.

98.     Defendants' "comparable value" price advertisements do not satisfy these requirements. The "comparable value" prices are not prices at which an identified or identifiable competitor in Defendants' Oregon geographic market area has, in the recent regular course of its business, offered to make good-faith sales of the same or similar goods within the meaning of OAR 137-020-0010(6)(c), and Defendants lack facts provable by the seller that would satisfy ORS 646.883(2)'s substantiation requirement.

99.     Defendants thus violate OAR 137-020-0010(6) and ORS 646.608(1)(j). By extension, Defendants' price comparisons do not comply with ORS 646.883(2), which independently establishes liability under ORS 646.608(1)(ee).

***ORS 646.608(1)(ee) violation based on failure to comply with ORS 646.885***

100.    Separately, Defendants violate ORS 646.608(1)(ee) by failing to comply with ORS 646.885(1), which states that price comparison "terms such as 'regular,' 'reduced,' 'sale,' 'usually,' 'originally,' 'clearance,' 'liquidation' and 'formerly' shall identify the origin of the price that the seller is comparing to the seller's current price as the seller's own former price, or in the case of introductory advertisements, the seller's future price."

101.    While Defendants run near-constant "sale" or discount prices for MFO Merchandise, Defendants do not identify "the origin of the price" being compared to the prevailing sale price. Defendants routinely advertise both category-specific and storewide "sales" and "percent-off" promotions but never disclose the actual basis for the reference prices, leaving customers without information necessary to determine whether the offered price reduction is

lawful or genuine or whether the products are actually worth the prices offered. The term "comparable value," on its own, is meaningless because it does not tell consumers what that price is—the seller's current price, a former price, or a bona fide competitor price.

102.    Because ORS 646.885(1) imposes an origin identification obligation whenever the seller uses the word "sale" or advertises a percentage-off discount, and because CO's advertisements for MFO Merchandise do not identify the price being compared, Defendants violate ORS 646.885, which independently establishes liability under ORS 646.608(1)(ee).

***ORS 646.608(1)(j) violation***

103.    Defendants' failure to comply with ORS 646.608(1)(j) and the implementing rule establishes a violation of ORS 646.883 and thus liability under ORS 646.608(1)(ee). In addition, ORS 646.608(1)(j) provides an independent basis for liability for the same conduct.

104.    Through their systematically unlawful price comparison policy, Defendants made "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions," in violation of ORS § 646.608(1)(j). Defendants did so by advertising false reference prices for MFO Merchandise that conveyed to consumers that the stated prices reflected bona fide market prices for other goods that are similar in all material respects. In truth, the ticketed prices were inflated and fictitious prices that never apply to MFO Merchandise. Moreover, because the "comparable value" prices were set uniformly across all CO stores nationwide and never adjusted for local competitor pricing, they cannot satisfy Oregon's geographic-market requirement.

***ORS 646.608(1)(u) violation***

105.    Defendants violated ORS 646.608(1)(u) because OAR 137-020-0010(6) defines as unfair or deceptive any reference-price advertisement that does not fall within an enumerated

exception, and Defendants' "comparable value" prices do not meet the requirements of the exception in subsection (6)(c). The alleged violation of subsection (1)(u) is based solely on Defendants' violation of OAR 137-020-0010(6), which defines as unfair or deceptive any reference-price advertisement that does not fall within an enumerated exception.

*ORS 646.608(1)(e) violation*

106.    Defendants represent that MFO Merchandise items have characteristics or qualities that they do not have, in violation of ORS 646.608(1)(e).

107.    Defendants' "comparable value" representations necessarily convey parity in quality between MFO Merchandise and the higher-quality merchandise sold by Coach and by Coach's (as opposed to CO's) direct competitors, which provide the apparent basis for the reference prices. Defendants implicitly represent that the MFO Merchandise embody the same qualities and characteristics as goods offered at the purported comparator prices. This equivalence is inaccurate because MFO Merchandise is made to a lower quality standard than the merchandise offered at the comparator prices Defendants invoke. In each case, Defendants represent that the value of MFO Merchandise is greater than it actually is by advertising fictitious discounts and illusory sales for the products.

*ORS § 646.608(1)(s) violation*

108.    Defendants make "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services," in violation of ORS 646.608(1)(s).

109.    The "comparable value" prices advertised on CO price tags and other advertisements do not correspond to the offering prices of substantially similar goods in the Oregon market. These prices—as well as the phrase "comparable value" itself—are false or misleading

representations of fact concerning the offering price of the products. A proper baseline for establishing the extent of a discount would be the regular prevailing prices for the same products at CO stores or the store of an identified or identifiable competitor (and not the prices of higher quality items sold by Coach or its competitors). In addition, the purported price reductions are not true price reductions.

***Willful, reckless, and knowing violations[5]***

110.     Defendants' unlawful methods, acts, and practices described above were willful violations within the meaning of ORS 646.605(10) because Defendants knew or should have known that their "comparable value" pricing practices did not comply with Oregon's reference-pricing statutes and rules.

111.     Defendants knew or should have known their conduct was unlawful because, among other things, Oregon law expressly prohibits comparative price advertising that does not identify the origin of the compared price and that is not based on prices offered by identified or identifiable competitors in the seller's geographic market area, yet Defendants continued to use uniform, nationwide "comparable value" prices in Oregon without making those disclosures or tying them to Oregon competitors.

112.     In addition, for purposes of ORS 646.638(8)(a), Defendants' use of "comparable value" pricing in Oregon was reckless or knowing. Defendants continued to employ the same opaque, non-competitor-based "comparable value" pricing model after being sued repeatedly for the same practice in other jurisdictions and after decisions applying Oregon's UTPA to similar

---

[5] Defendants' willful, knowing, or reckless conduct is alleged solely for purposes of remedies under ORS 646.638 and is not an element of liability.

"comparable value" schemes, yet they made no effort to conform their Oregon pricing practices to Oregon's stricter requirements.

113.    Defendants' willful, reckless, and knowing use or employment of unlawful reference-price practices entitles Plaintiff to recover actual damages or statutory damages under ORS 646.638(1) and entitles the Class to recover statutory damages under ORS 646.638(8)(a).

***Ascertainable loss***

114.    Defendants' unlawful trade practices caused causing Plaintiff and Class members to suffer ascertainable loss, as required by ORS 646.638(1).

115.    Defendants' uniform and noncompliant price representations distorted the transaction prices of MFO Merchandise sold in Oregon by creating the appearance of genuine comparative discounts that did not exist. As a result of that distortion, Plaintiff and Class members paid more for MFO Merchandise than they otherwise would have paid in the absence of Defendants' unlawful pricing practices.

116.    Defendants were thus able to fetch a higher market price than they would have but-for their illegal conduct, which caused every consumer (regardless of whether they relied upon or even saw the price representations) to pay more as a result of Defendants' illegal actions.

117.    Plaintiff and Class members therefore suffered ascertainable loss in the form of an overpayment or price premium attributable to Defendants' unlawful price representations. That loss is measurable as the difference between the prices actually paid and the prices that would have prevailed absent Defendants' unlawful comparative price advertising.

118.    Independently, Plaintiff and Class members suffered ascertainable loss when Defendants caused them to enter into retail transactions that Oregon law prohibits. Defendants were not legally entitled to consummate sales based on comparative price advertisements that

failed to comply with, among other provisions, ORS 646.883, ORS 646.885, and OAR 137-020-0010(6), and the payment of money in those transactions constitutes an ascertainable loss regardless of individualized reliance.

119.    These theories of ascertainable loss do not depend on whether any individual purchaser subjectively relied on Defendants' price representations.

120.    In the alternative, to the extent actual damages require further quantification, Plaintiff and Class members seek statutory damages as authorized by ORS 646.638(1) and (8).

***Statute of limitations***

121.    This action was brought "within one year after the discovery of the unlawful method, act or practice." ORS 646.638.

122.    Under ORS 646.638(6), the limitations period is subject to delayed discovery. Plaintiff and the Class did not know, and could not reasonably have known, that Defendants' reference-price representations were unlawful because the basis for the "comparable value" prices was neither disclosed nor discernible to consumers. Defendants' pricing practice was self-concealing because only Defendants possessed information about the origin and substantiation of the reference prices, and consumers had no practical means of determining whether the represented comparisons complied with Oregon law. The nature of the unlawful practice rendered discovery impossible without access to Defendants' internal pricing rationale or reference-price substantiation, neither of which is accessible to consumers. As a result, absent class members will learn of the practice for the first time upon class notice.

123.    This action is therefore timely under ORS 646.638(1) and (6).

***Relief***

124.    Plaintiff seeks, for herself and all Class members, (a) the greater of statutory damages of $200 or actual damages, (b) punitive damages, (c) appropriate equitable and declaratory relief, and (d) attorneys' fees and costs. ORS 646.638(3); 646.638(8).

125.    Monetary relief alone cannot remedy the ongoing nature of Defendants' unlawful trade practices, which are uniformly applied to every consumer who enters CO outlet stores in Oregon. Absent injunctive and declaratory relief, Plaintiff and the Class will continue to be subjected to the same unlawful representations. Injunctive relief is therefore necessary and properly sought under ORS 646.638(1) and Federal Rule of Civil Procedure 23(b)(2).

126.    Pursuant to ORS 646.638(1), Plaintiff seeks injunctive relief to restrain Defendant from engaging in the unlawful trade practices described herein, together with declaratory relief confirming that Defendants' reference-price advertising practices violate Oregon law.

127.    Defendants' use of the "comparable value" legend on the price advertisements for MFO Merchandise violates ORS 646.883(1) and ORS 646.608(1)(ee) because the advertisements do not clearly and conspicuously identify the origin of the compared price. Accordingly, Plaintiff seeks an injunction restraining Defendants from using such reference-price representations unless each advertisement containing a "comparable value" price clearly and conspicuously identifies the origin of the compared price.

128.    ORS 646.883(2) requires that any reference price advertised in Oregon be supported by facts "provable by the seller," including documentation of the origin of the compared price and verification that the price reflects bona fide competitor offerings under OAR 137-020-0010(6)(c). Accordingly, Plaintiff seeks an injunction requiring Defendants to maintain contemporaneous reference-price substantiation consistent with the statute's requirements.

129.     Oregon law requires reference prices to be based on an identified or identifiable competitor in the seller's geographic market area. OAR 137-020-0010(6)(c). Defendants' practice of applying uniform national "Comparable Value" prices, without regard to any Oregon-specific competitor, violates this requirement. Accordingly, Plaintiff seeks an injunction restraining Defendants from using reference prices in Oregon that are not based on Oregon-specific competitor pricing consistent with OAR 137-020-0010(6)(c).

130.     A declaration is appropriate because a present, actual controversy exists regarding Defendants' ongoing use of reference-price representations that violate ORS 646.883, ORS 646.608(1)(ee), and OAR 137-020-0010(6). Plaintiff seeks a judicial declaration that Defendants' conduct violates these provisions.

**COUNT II**
**Unjust Enrichment**
**(By Plaintiff and the Class)**

131.     Plaintiff incorporates the factual allegations above only to the extent they are consistent with this claim. This claim is not based on any alleged statutory violation, but on the inequitable retention of benefits conferred by Plaintiff and the Class.

132.     Plaintiff pleads this claim in the alternative under Rule 8(d)(2) and (3). As such, Plaintiff seeks relief only to the extent statutory remedies under the Oregon UTPA are deemed unavailable or inadequate.

133.     Even if Defendants' price-comparison practices are not deemed to violate the UTPA, Defendants nonetheless received and retained a monetary benefit from Plaintiff and Class members when they charged transaction amounts determined by fabricated or unsubstantiated "Comparable Value" reference prices.

134.    Plaintiff and Class members conferred a monetary benefit on Defendants when they purchased merchandise priced using fabricated or unsubstantiated "Comparable Value" reference prices. Defendants accepted and retained this benefit because they set and applied those prices in the ordinary course of their pricing practices and collected the resulting transaction amounts. Under these circumstances, it would be inequitable for Defendants to retain the benefit, particularly if statutory remedies are unavailable or inadequate.

135.    In the alternative only, the transactions at issue are void or voidable because they were induced by representations that rendered the resulting exchanges inequitable.

136.    Plaintiff and the Class seek restitution, disgorgement, and, in the alternative, rescission.

## PRAYER FOR RELIEF

**WHEREFORE**, on behalf of herself and the proposed Class, Plaintiff requests that the Court order relief and enter judgment against Defendant as follows:

a)    Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and her counsel to represent the Class;

b)    Declare that the delayed discovery rule, pursuant to, without limitation, ORS 646.638(6), applies and that the applicable limitations period—and the corresponding class period— extends back to the very first date that Defendant began engaging in the unlawful conduct alleged herein;

c)    Declare that Defendants' use of "Comparable Value" price tags without identifying the origin of the compared price violates ORS 646.883 and ORS 646.608(1)(ee);

d) Enjoin Defendants from using any comparative reference price in Oregon that is not derived from Oregon-specific competitor prices for substantially similar goods, as required by ORS 646.883 and OAR 137-020-0010(6)(c);

e) Enjoin Defendants from using "Comparable Value," "Compare At," or any comparative price representation on price tags or in-store advertisements in Oregon unless each advertisement independently identifies the origin of the compared price and the compared price satisfies all requirements of ORS 646.883 and OAR 137-020-0010, including the requirement that the reference price reflect the bona fide price charged by an identified or identifiable competitor in Defendants' geographic market area for substantially similar goods;

f) Require Defendants to maintain, for a period of three years, contemporaneous records demonstrating the origin of every comparative reference price used in Oregon as required by ORS 646.883, including (1) the identity of the competitor relied upon; (2) the substantially similar item offered by that competitor; (3) the price at which the competitor offered the item in the recent regular course of business; and (4) the basis for determining that the competitor item and Defendants' item are similar in each significant aspect, consistent with OAR 137-020-0010(5)(g);

g) Order Defendant to pay statutory damages of $200 or actual damages, whichever is greater, to Plaintiff and each member of the Class, pursuant to, without limitation, ORS 646.638(1) and 646.638(8)(a);

h) Order Defendant to pay punitive damages to Plaintiff and each member of the Class in an amount to be determined at trial, pursuant to, without limitation, ORS 646.638(1) and 646.638(8)(b);

i)  Order Defendant to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

j)  Order any other relief to which Plaintiff and members of the Class are justly entitled.

## JURY DEMAND AND NOTICE TO ATTORNEY GENERAL

Plaintiff and the Class demand a trial by jury on all issues so triable. Further, upon filing of this action, this Complaint shall be mailed to the Attorney General of the State of Oregon, and proof of receipt of same shall be filed with the Court.

Respectfully submitted,

Dated: January 30, 2026

*/s/ Ryan Casey*
M. Ryan Casey, OSB # 152824
THE CASEY LAW FIRM, LLC
358 Blue River Pkwy Unit E-317
Silverthorne, CO 80498
Email: ryan@rcaseylaw.com

Gillian Wade (*pro hac vice* forthcoming)
WADE KILPELA SLADE LLP
2450 Colorado Avenue, Suite 100E
Santa Monica, CA 90404
Tel: (310) 667-7273
Fax: (424) 276-0473
Email: gwade@waykayslay.com

Edwin J. Kilpela, Jr. (*pro hac vice* forthcoming)
WADE KILPELA SLADE LLP
6425 Living Place, Suite 200
Pittsburgh, PA 15206
Phone: (412) 314-0515
Email: ek@waykayslay.com

Evan E. North (*pro hac vice* forthcoming)
NORTH LAW PLLC
1900 Market Street, Suite 800
Philadelphia, PA 19103
Phone: (202) 921-1651
Email: evan@northlawpllc.com

*Attorneys for Plaintiff and the Proposed Class*